## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ANNETTE BELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 14 C 8059 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| THOMAS DART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Annette Bell, Samantha Spielman, Shirley Fox, Adriana Williams, and Chante Brown (collectively, "Plaintiffs") initiated this class action lawsuit against Cook County, Illinois, and Thomas Dart, the Sheriff of Cook County (collectively, "Defendants"). Plaintiffs allege that Defendants violated their Fourth and Fourteenth Amendment rights by detaining them in an unreasonable manner after a court had ordered their release. Presently before the Court is Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(3). (R. 27, Pls.' Mot.) For the reasons stated below, Plaintiffs' motion is granted with a modification of the class definition.

## BACKGROUND

### I.    *Otero v. Dart*

The present suit originates out of the closely linked case of *Otero v. Dart*, No. 12 C 3148 (N.D. Ill. filed Apr. 27, 2012). In that case, Brian Otero ("Otero") filed suit against the same defendants as in this case, alleging that they maintained an unlawful policy of "detaining, holding in custody, or imprisoning free citizens following a trial or other proceeding at which the citizen is found not guilty or otherwise acquitted." *Otero v. Dart*, 306 F.R.D. 197, 200 (N.D. Ill.

2014). Alleging that "Defendants' illegal policies and/or procedures subjected class members to being detained for unreasonable amounts of time and in an unreasonable manner," *id.*, Otero sought to certify a class of all those who had been detained by the defendants after having been found not guilty or acquitted from April 27, 2010, onward, Compl. at ¶ 11, *Otero*, No. 12 C 3148. In light of the finding in *Bullock v. Dart*, 599 F. Supp. 2d 947, 953-54 (N.D. Ill. 2009), that female acquittees were subjected to a different set of procedures, Otero filed a motion for class certification on July 19, 2013, narrowing the class to include only males. Mot. for Class Cert. at 8 n.5, *Otero*, No. 12 C 3148. On September 2, 2014, U.S. District Judge Amy St. Eve certified the following class under Rule 23(b)(3):

> All male inmates who while being detained by the Cook County Sheriff's Office were found not guilty, were acquitted, or had charges brought against them dismissed, and for whom the Sheriff's Office no longer had any legal right to detain from April 27, 2010 through the present.

*Otero*, 306 F.R.D. at 208.

## II.    Present Case

Plaintiff Bell, who as a female detainee had been excluded from the *Otero* class, filed her complaint on October 15, 2014, (R. 1, Compl.), after the U.S. Court of Appeals for the Seventh Circuit declined to review the class order in *Otero*. (R. 27, Pls.' Mot. at 3.) On January 9, 2015, Plaintiff filed an amended complaint adding four additional plaintiffs and alleging violations of their Fourth and Fourteenth Amendment rights. (R. 12, Am. Compl.) On May 8, 2015, Plaintiffs filed the instant motion to certify a class of all female inmates who had received judicial orders entitling them to immediate release since April 27, 2010. (R. 27, Pls.' Mot. at 1.) In large part, Plaintiffs challenge the same policies that were at issue in *Otero*. (*Id.* at 6.)

Plaintiffs assert the following facts in support of their motion for class certification. After a detainee is acquitted or is otherwise found to be entitled to release on the charges for which she

was present in court, she is immediately taken back into custody by the Cook County Sheriff's Office and confined in a holding cell behind the judge's chambers. (*Id.* at 6-7.) For detainees such as Plaintiff Bell who attend court at the Leighton Courthouse at 26th Street, the Sheriff's Office then moves them to

> a larger holding cell known as the "bridge," which is located in the basement of the criminal court building at 26th Street and California. The bridge consists of eight holding cells (known as "bullpens"), which hold new inmates as well as other inmates returning from court. Each bullpen holds approximately 50 individuals at any given time. The Sheriff's Office does not segregate or otherwise treat differently the acquitted detainees from the other inmates.

(*Id.* at 7 (quoting *Otero*, 306 F.R.D. at 201).) Next, these detainees are moved to another bullpen at the Cook County Department of Corrections before being transported to their housing units in the same manner as detainees who are not entitled to release. (*Id.*) Once clerks in the Records Office have reviewed the court documents of returning detainees, those who are entitled to release are brought from their housing units to an outtake area, where they wait to be released. (*Id.*)

Detainees who are instead taken to a branch court or suburban courthouse are transported to and from the courthouse by bus. (*Id.*) The bus may visit several courthouses to pick up detainees before returning to the jail, and detainees are handcuffed and shackled while they are on the bus. (*Id.*) Once they return to the jail, these detainees are also returned to their housing units in the same manner as detainees not entitled to release. (*Id.* at 8.) They also wait there until their paperwork has been processed, at which point they are transported to an outtake area and wait to be released. (*Id.*)

The different treatment between male and female detainees, referenced in the *Otero* motion for class certification and the basis for the exclusion of female detainees from the *Otero*

class, stems from a preliminary injunction order in *Gary v. Sheahan*, No. 96 C 7294, 1998 WL

245875 (N.D. Ill. May 4, 1998). That case concerned the Cook County Sheriff's Office's

practice of subjecting female detainees, but not male detainees, to strip searches upon returning

to the jail from court, whether or not there had been a judicial determination that there was no

longer a basis for their detention other than to be processed for release. *Id.* at *1. The preliminary

injunction order required that:

> All female inmate court returns with a mittimus indicating that as to their court
> case they should be discharged, are to be held in a holding cell while there is a
> computer check done of their records to determine whether there is a further need
> to hold them. If [not] . . . , then her clothing shall be brought to her in the holding
> cell and she shall be given the option to either retrieve her personal items from her
> living quarters or to recover her personal items and any other personal property
> from the property room at a later time.

*Id.* In order to comply with this order, the Sheriff's Office changed its policy accordingly and

created "two different consent forms, one for requesting to remain in [the receiving area] and the

other to return to [her housing unit]." *Id.* at *2.

While Defendants contend that they continue to offer female detainees the choice set

forth in *Gary*, (R. 59, Defs.' Resp. at 7), Plaintiffs allege "that the Sheriff no longer follows the

*Gary* policy and thereby subjects female detainees entitled to immediate release to unreasonable

and unsafe conditions of confinement," (R. 27, Pls.' Mot. at 9).[1]

---

[1] It is worth noting that what Defendants claim to offer female detainees is not precisely the choice set
forth in *Gary*. That order instructed the defendants to hold female detainees pending discharge in a
separate holding cell in all cases while their discharges are processed, and it only required that they be
given a choice whether to retrieve personal items themselves or to pick them up later. Here, Defendants
claim to give female detainees entitled to release the choice whether to return to their housing units or
remain in the holding area throughout the entire process. Although Defendants' response argues that *Gary*
still binds them, (R. 59, Defs.' Resp. at 1), Defendants have stated otherwise in their response to
interrogatories, (R. 64, Ex. 1, Def. Sheriff's Answers to Pl.'s Interrogatories at 2-3 ("[Female detainees]
are not provided with consent forms [as required by *Gary*] as strip searches are not conducted of the
females who wish to return to their living unit and that was the issue that was raised in *Gary*[.]")). For
simplicity, the Court will refer to the option Defendants currently purport to provide as the "*Gary* option."

Individually, the named Plaintiffs allege that they faced similar experiences despite some differences in their particular circumstances. Plaintiff Bell was arrested on an erroneously issued warrant for violation of probation in April 2014, and at her court appearance at the Leighton Courthouse the judge informed her that she had been arrested in error. (*Id.* at 3.) She was not released at that time, however, despite the fact that she had no other pending cases or warrants. (R. 27, Ex. 5, Decl. of A. Bell at 1.) Instead, she was placed in the lockup adjacent to the courtroom until she was taken back to her housing unit at the jail. (R. 27, Pls.' Mot. at 3-4.) She remained there until she was taken to a bullpen, where she sat for several hours. (R. 27, Ex. 5, Decl. of A. Bell at 2.) She then was held in the receiving area until she was ultimately released. (*Id.*)

The other named Plaintiffs appeared at different courthouses and were released under varying circumstances. (R. 27, Pls.' Mot. at 4-6.) Plaintiff Spielman was ordered released by a judge on the grounds that there was no probable cause for her arrest for possession of a controlled substance. (*Id.* at 4.) Plaintiff Brown was sentenced to one year of probation after pleading guilty to domestic battery and was ordered released. (*Id.* at 4-5.) Plaintiff Fox was arrested for domestic battery and was ordered released on a personal recognizance bond. (*Id.* at 5.) Plaintiff Williams pled guilty to a misdemeanor offense and was sentenced to one year of conditional discharge, entitling her to release. (*Id.*) Each was held at the courthouse after her court appearance until she was transported, handcuffed and shackled, back to the jail to process her release. (*Id.* at 7-8.) Once they were returned to the jail, these detainees were treated the same as those who returned from the Leighton Courthouse like Plaintiff Bell. (*Id.* at 8.) The motion for class certification has now been fully briefed. (R. 59, Defs.' Resp.; R. 64, Pls.' Reply.)

## LEGAL STANDARD

To obtain class certification under Rule 23, a plaintiff must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015); *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009). In this case, Plaintiffs argue that class certification is appropriate under Rule 23(b)(3). (R. 27, Pls.' Mot. at 1.) A court may certify a Rule 23(b)(3) class where "questions of law and fact common to members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

In order to grant class certification under Rule 23, the Court must be "satisfied, after a rigorous analysis" that the Rule's requirements are met. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation omitted). "Failure to meet any of the Rule's requirements precludes class certification." *Harper*, 581 F.3d at 513 (citation omitted). Satisfaction of these requirements, on the other hand, categorically entitles a plaintiff to pursue her claim as a class action. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398-99 (2009). The plaintiff bears the burden of proving each disputed requirement by a preponderance of the evidence. *PNC Bank*, 800 F.3d at 373. District courts have broad discretion in determining whether the plaintiff has satisfied this burden. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

**ANALYSIS**

**I.     Rule 23(a)**

Plaintiffs move to certify the following class:

> All women who, after having been remanded to the custody of the Sheriff of
> Cook County were found not guilty, found guilty and sentenced to a sentence of
> "time considered served," had charges brought against them dismissed or
> "SOL'd,"[2] were ordered released on bond, or otherwise ordered released, and for
> whom the Sheriff's Office no longer had any legal right to detain from April 27,
> 2010 to the date of judgment.

(R. 27, Pls.' Mot. at 1.) Plaintiffs argue that the proposed class satisfies the requirements of Rule

23(a) and Rule 23(b)(3).

**A.     Numerosity**

Rule 23(a)(1) permits class certification only when "the class is so numerous that joinder

of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Although there is no 'bright line' test

for numerosity, a class of forty is generally sufficient[.]" *McCabe v. Crawford & Co.*, 210 F.R.D.

631, 643 (N.D. Ill. 2002); *see also Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 182 (N.D.

Ill. 2015) (same). When the parties dispute how many members are included in the class and thus

whether numerosity has been established, the Court may rely on evidence to determine class size.

*PNC Bank*, 800 F.3d at 371.

Originally, Plaintiffs estimated that there were roughly ten thousand class members,

calculated by taking the total number of released detainees and approximating how many were

female based on the proportion of females admitted to the Cook County Jail. (R. 27, Pls.' Mot. at

12.) Defendants take issue with this method of estimation, and they further argue that any female

detainees who were given the choice whether to return to their housing units after a court ordered

---

[2] Although Plaintiffs do not define this acronym in their briefing, the Court takes judicial notice of the
fact that "SOL" means "stricken with leave to reinstate." *Mitchell v. Keenan*, 50 F.3d 473, 475 (7th Cir.
1995); *see also Otero*, 306 F.R.D. at 205.

their release should not be included as potential class members. (R. 59, Defs.' Resp. at 10.) Because Defendants claim that this option is presented to all female potential discharges, (*id.* at 7), they object to Plaintiffs' claim that numerosity is satisfied by the total number of female detainees discharged each year, (R. 27, Pls.' Mot. at 12). In their reply, Plaintiffs now state that Defendants have produced a spreadsheet showing that 5752 female detainees falling within the proposed class definition were released during the relevant time period. (R. 64, Pls.' Reply at 6-7.)

Although the Court is narrowing the class definition as set forth in the commonality discussion below, Plaintiffs have shown by a preponderance of the evidence that their class is sufficiently numerous. Even though the class will surely number fewer than the 5752 members currently claimed by Plaintiffs, it is all but certain to include more members than could practicably be joined. *See Shurland v. Bacci Café & Pizzeria on Ogden Inc.*, 259 F.R.D. 151, 158 (N.D. Ill. 2009) ("It is not required that the plaintiff know the precise number of class members[.]"). The Court finds it implausible that, out of 5752 female releases, fewer than forty were released who would not meet the modified class definition discussed below.

Additionally, the Court is unconvinced by Defendants' contention that the class would not be sufficiently numerous if female detainees who were given the option not to return to their housing units were excluded. In their reply, Plaintiffs have provided twenty affidavits from former detainees, each stating that they had not been provided such an option while their releases were being processed. (R. 64, Pls.' Reply at 17-42.) The release dates covered by these affidavits range from January 23, 2014, to April 19, 2015, a period of fifteen months. (*Id.*) Even though it is unclear from the affidavits whether each individual falls under the new class definition, the Court finds that the production of twenty affidavits from a period of fifteen months establishes

8

by a preponderance of the evidence that at least forty proposed class members would claim to have experienced the same treatment. Regardless, the Seventh Circuit has held that a class's numerosity may be established without strictly verifying the injury suffered by each individual class member. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1084-85 (7th Cir. 2014) ("To require the district judge to determine whether each of the 150 members of the class has sustained an injury . . . would require . . . 150 trials before the class could be certified."). The ultimate resolution of this factual question, whether this option was provided at all and if so to whom, will be more appropriately pursued at trial; regardless, the Court finds that Plaintiffs have provided sufficient evidence to establish that their class satisfies the numerosity requirement of Rule 23(a)(1).

### B.    Commonality

Rule 23(a)(2) requires plaintiffs to establish the existence of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality requires that the class members "have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 131 S. Ct. at 2551 (citation omitted). "What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) (quoting *Wal-mart*, 131 S. Ct. at 2551). Common answers are rarely found where the defendant's allegedly injurious conduct is different for individual class members, but "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). In short, a common question must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015) (quoting *Wal-mart*, 131 S. Ct. at 2551).

Plaintiffs identify the following questions of law and fact that they assert are common to their proposed class:

1.      Whether Defendant lacks policies and procedures that acknowledge a female inmate's right to freedom that she acquires by virtue of an acquittal or other favorable disposition of the charges brought against [her];

2.      Whether Defendant maintains a policy or practice of detaining female citizens who were found not guilty or otherwise received a judicial determination requiring their release by seizing and handcuffing them, detaining and transporting them in the same holding cells as the other regular inmates, processing them back into the general prison population and continuing to hold them until running a check for outstanding warrants; and

3.      Whether such policies or practices (or lack thereof) are unconstitutional.

(R. 27, Pls.' Mot. at 9.) Based on these questions, Plaintiffs' claims challenge Defendants' alleged use of "unreasonable and unsafe conditions of confinement" in treating female detainees entitled to immediate release in the same manner as regular inmates returning to their cells. (*Id.* at 9.) Plaintiffs contend that Defendants' policy or practice of requiring such detainees to return to their housing units exposes them to unnecessary dangers from regular inmates and unreasonably restricts their freedom despite a court's determination that they need not be detained any longer. (*Id.*) Plaintiffs' claims center on Defendants' procedures in processing female detainees entitled to release and not on such individual factors as the amount of time they are subsequently held. *See Otero*, 306 F.R.D. at 207 (noting with regard to identical claims that "Plaintiff's allegations . . . focus on a specific detention procedure, rather than the length of detention").

10

Defendants argue that Plaintiffs fail to establish commonality because their class definition is too broad. (R. 59, Defs.' Resp. at 13.) In their motion, Plaintiffs observe that the class in *Otero* was limited to male inmates who had been found not guilty, were acquitted, or had the charges brought against them dismissed. (R. 27, Pls.' Mot. at 11.) In defining their class more broadly in the instant lawsuit, Plaintiffs simply state that "[t]here is no reason" to exclude any female detainees who were entitled to immediate release regardless of any conditions on that release. (*Id.*) Defendants point out, however, that "[a] one year sentence of probation or conditional discharge, . . . by its very wording, clearly does not end simply because the detainee is released from custody." (R. 59, Defs.' Resp. at 12.) Plaintiffs respond only that "the Sheriff is not involved with probation or conditional discharges." (R. 64, Pls.' Reply at 6.)

The Court agrees with Defendants that Plaintiffs' proposed class is too broad to fully satisfy commonality. As observed by Judge St. Eve in *Otero*, "detainees with pending criminal charges are not entitled to the same 'right to freedom' as an acquitted detainee," nor are those who have been granted some form of conditional release. *Otero*, 306 F.R.D. at 206; *see also United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." (citation and internal quotation marks omitted)); *Sandin v. Conner*, 515 U.S. 472, 480 (1995) ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." (citation and internal quotation marks omitted)); *United States v. Douglas*, 806 F.3d 979, 985 (7th Cir. 2015) ("[P]ersons on probation, parole, supervised release, or other forms of criminal justice supervision short of full-time custody are not entitled to the full range of constitutional liberties."). Plaintiffs' case ultimately reduces to the claim that Defendants' policies do not constitutionally comport with "a female inmate's right to freedom

that she acquires by virtue of an acquittal or other favorable disposition of the charges brought against [her]." (R. 27, Pls.' Mot. at 9 (emphasis omitted); *see also id.* at 14 ("Here, plaintiff[s] challenge defendant's uniform policy of treating all female detainees entitled to release the same as female detainees not so entitled[.]").) This "right to freedom" underlies the legal question common to the class, and determining its contours will be necessary to resolve Plaintiffs' claims. Because some members of the class would in fact require a distinct legal analysis to resolve their claims, Plaintiffs have not sufficiently established that any question of law or fact is common to the entirety of the overbroad proposed class.

For these reasons, the Court finds that a modified class including only those female detainees who "were found not guilty or acquitted, were found guilty and sentenced to a sentence of 'time considered served,' or had charges brought against them dismissed or 'SOL'd' " satisfies the commonality requirement. Under this definition, the proposed class members would share common questions of law or fact regarding Defendants' policy or practice and its constitutionality as applied to them.

The class definition may not, however, include the language "were ordered released on bond, or otherwise ordered released." Such individuals, including those who have been ordered released on probation, through any other conditional release, or with any still-pending charges, are still under the thumb of the State and to some extent subject to its controls. In addition to the proposed class members who are excluded by this order, named Plaintiffs Brown, Fox, and Williams, who no longer meet the class definition, are dismissed from the class.

Beyond the breadth of the class, Defendants further argue that *Harper v. Sheriff of Cook County*, 581 F.3d 511 (7th Cir. 2009), and *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010), support denial of Plaintiffs' class. (R. 59, Defs.' Resp. at 15.) The Court disagrees. These

cases focused on the length of time that individuals were detained while their releases were pending, and the common questions of whether processing delays were reasonable would require numerous individual determinations for each class member, into such matters as the length of their detention and whether competing law enforcement priorities may have necessitated any delay. *Harper*, 581 F.3d at 514-15 ("Failing to take issue with any particular intake procedure, Harper is left with a claim that the Sheriff is unconstitutionally holding detainees after bond has been posted. . . . That is an individual issue that will depend on how long each detainee was held . . . and what justifications there might be for the delay on that particular day[.]"); *Portis*, 613 F.3d at 705 (finding that to establish unreasonably delayed release, "the court must examine not only the length of a given detention but also the reasons why release was deferred"). Here, Plaintiffs challenge Defendants' alleged policy of subjecting female detainees entitled to release to those same restrictions and dangers as regular inmates. In contrast to *Harper* and *Portis*, the existence of this policy and its constitutionality are subject to a binary, yes-or-no resolution as applied to all members of the proposed class; the answers to these questions do not depend on the individual circumstances of each class member. Despite Defendants' attempt to read these cases more broadly than is supportable,[3] their example is clearly limited to the duration of the delay while release is pending and thus is inapplicable in the instant case.

Defendants also contend that, because Plaintiffs' claim is based upon "each class member being discharged under the same procedure," (R. 59, Defs.' Resp. at 14), it runs afoul of the Supreme Court's warning that showing simply that class members "have all suffered a violation

---

[3] For instance, Defendants describe the holding of *Portis* as follows: "The court found that the facts and circumstances for each arrestee's release, *in particular whether they were provided with the opportunity to return to their living unit or remain in the holding area*, would have to be examined and that such inquiry goes to the reasonableness of the detention." (R. 59, Defs.' Resp. at 15 (emphasis added).) *Portis* reveals no such particular attention to the policy at issue in the present case, and all mentions of individualized inquiry relate to the length of detention and the potential causes for delay.

of the same provision of law" is not enough to establish commonality, *Wal-Mart*, 131 S. Ct. at

2551. Defendants appear to have misread the relevant precedent. *Wal-Mart* involved the

proposed certification of a class of female Wal-Mart employees who alleged that "their local

managers' discretion over pay and promotions is exercised disproportionately in favor of men,

leading to an unlawful disparate impact on female employees." *Id.* at 2548. The Supreme Court

observed that the plaintiffs claimed commonality because Wal-Mart's corporate culture allegedly

permitted bias against women to influence discretionary decisions, "thereby making every

woman at the company the victim of one common discriminatory practice." *Id.* However, the

Court found, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, can be violated

in many different ways and the plaintiffs provided no facts to suggest that the class members had

actually suffered one similar injury rather than a collection of different injuries sharing no

common features beyond the appropriate cause of action. *Id.* at 2551. If some class members

suffered intentional discrimination by a supervisor in Alabama and others were injured by hiring

and promotion criteria that result in disparate impact toward women in a store in Florida, there is

no reason to believe that these claims would be "capable of classwide resolution" even though

they both fall under Title VII.[4] *Id.*

---

[4] The Court would note that one of the difficulties in *Wal-Mart* was that, although all class members allegedly suffered discrimination under Title VII, they could not establish that they had suffered it by the same procedure. Indeed, the Supreme Court explicitly stated that "if the employer used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test *clearly* would satisfy the commonality . . . requirement[]." *Id.* at 2553 (emphasis added) (citation and internal quotation marks omitted). Defendants' apparent equation of "discharged under the same procedure" and "suffered a violation of the same provision of law" is thus unconvincing. *See also Chi. Teachers Union*, 797 F.3d at 437 ("[A] company-wide practice is appropriate for class challenge even where some decisions in the chain of acts challenged as discriminatory can be exercised by local managers with discretion—at least where the class at issue is affected in a common manner, such as where there is a uniform policy or process applied to all.").

The present case is very different. It is true that Plaintiffs allege that commonality is established because each detainee was treated as restrictively as a normal prisoner after the resolution of their criminal cases, but they in fact allege as a common injury that their liberty was unreasonably curtailed despite the fact that they were no longer subject to criminal prosecution. This is not a case where many prisoners attempt to band together to challenge a prison's policies under the Eighth Amendment, each for different conduct—some for failure to protect, some for insufficient dental care, and still more for insufficiently nutritious food. Instead, Plaintiffs allege that they have suffered the same injury from "the same conduct or practice by the same defendant." *Suchanek*, 764 F.3d at 756. They present facts establishing that members of the class are repeatedly returned to holding cells and housing units with regular inmates despite judicial determinations that they are not subject to further detention, and they present numerous affidavits belying Defendants' contention that Defendants give each detainee a choice to be thus restricted. Whether Defendants follow a policy of treating detainees entitled to immediate release the same as regular prisoners or lack a policy preventing such treatment, and whether their conduct is constitutional, are factual and legal issues common to the class. Defendants further argue that "the differences in each Plaintiffs' circumstances and disposition demonstrate that there is no commonality between the class members." (R. 59, Defs.' Resp. at 12.) While there are certainly factual distinctions between each proposed class member's situation, "[e]ven a single [common] question will do" when establishing commonality. *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 497 (7th Cir. 2012) (alterations in original) (quoting *Wal-Mart*, 131 S. Ct. at 2556) (internal quotation marks omitted).

Defendants also contend that Plaintiffs have failed to establish commonality because resolution of their claims will necessitate individually asking each class member whether she was given the choice to return to her housing unit. (R. 59, Defs.' Resp. at 13.) If so, Defendants argue that such detainees "cannot be part of this class" because they voluntarily returned to the

housing unit; in their view, the existence of individual questions thus defeats class certification. (*Id.*) The Court is unpersuaded. Defendants have substituted a question of evidence for the substantive concern of Rule 23(a)(2). Commonality is satisfied when the same conduct by the defendants causes the same kind of harm to the potential class members. *Suchanek*, 764 F.3d at 756. Although establishing whether Defendants present the *Gary* option to female detainees may require inquiries of individuals as an evidentiary matter, the answer "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mullin*, 795 F.3d at 673 (quoting *Wal-Mart*, 131 S. Ct. at 2551). In other words, whether the option is presented would resolve one of the major issues in the case: Defendants claim the detainees return to their housing units voluntarily, obviating any liability, while Plaintiffs claim they are treated as normal prisoners without any choice in the matter. Additionally, even if Defendants present the option in some but not all cases, this is not fatal to Plaintiffs' claim at this stage: the Seventh Circuit has made clear that it is "wrong" to conclude that "no class can be certified until proof exists that every member has been harmed." *Suchanek*, 764 F.3d at 757; *see also Parko*, 739 F.3d at 1085 ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified."); *Messner*, 669 F.3d at 823 ("[T]hat some class members' claims will fail on the merits if and when damages are decided[ is] a fact generally irrelevant to the district court's decision on class certification."); *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class will often include persons who have not been injured by the defendant's conduct . . . . Such a possibility or indeed inevitability does not preclude class certification[.]"). Plaintiffs have already produced twenty affidavits attesting that these individual detainees were not provided the *Gary* option; these affidavits are in fact the only available method by which Plaintiffs could establish Defendants' alleged policy or practice of treating class members the

same as regular inmates. *See McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 875 (7th Cir. 2015) ("[T]he need for individual proof alone does not necessarily preclude class certification." (citation omitted)). For these reasons, the Court finds that the proposed class, as narrowed, satisfies the commonality requirement.

### C. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011) (citation omitted). A typical claim is one that "arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and is "based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). Even when there are "factual distinctions between the claims of the named plaintiffs and those of other class members," typicality can be satisfied when the named plaintiffs' claims "have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted).

Defendants argue that Plaintiffs' "overly broad class definition clearly demonstrates that the typicality requirement cannot be [met] either by the named Plaintiffs themselves or on a classwide basis." (R. 59, Defs.' Resp. at 17.) Having narrowed the class definition above, the Court disagrees that the remaining class's breadth poses any typicality problem. It is inappropriate to "lump together thousands of disparate plaintiffs with widely varying individual claims" into one "sweeping class definition," *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 493 (7th Cir. 2012), but here there is neither an unmanageably large class nor a significant difference in the class members' claims. Despite the varying reasons for their release, the Court

17

is satisfied that each member of the narrowed class enjoys the same liberty interest and that any variations will not play a significant role in the litigation of their claims. For the same reason, the fact that no named Plaintiff was found not guilty after a trial or released with a sentence of time served does not impact typicality; as the claims of the named Plaintiffs sufficiently reflect those of each class member in all relevant respects, the Court declines to draw so fine a distinction to no purpose. *See Muro*, 580 F.3d at 492.

Defendants also argue that the proposed class is not sufficiently ascertainable.[5] (R. 59, Defs.' Resp. at 16-17.) Ascertainability may pose a problem when "the relevant criteria for class membership are unknown," *Jamie S.*, 668 F.3d at 495, and especially when identifying class members "cannot be reduced to the application of a set of simple, objective criteria," *id.* at 496. *See also Adashunas v. Negley*, 626 F.2d 600, 603 (7th Cir. 1980) (denying certification because identifying class members would involve a "long, arduous process" and the proposed class was "so highly diverse and difficult to identify"). Because Defendants contend that female detainees who were provided the *Gary* option cannot be members of the class, and because the only way to tell which potential class members were given the *Gary* option is to ask them individually, Defendants conclude that "the ability to ascertain class members is virtually impossible." (R. 59, Defs.' Resp. at 17.) First, as explained above, the fact that some class members may have been given the *Gary* option does not defeat certification. *Messner*, 669 F.3d at 823; *Kohen*, 571 F.3d at 677. Whether any individual detainee was provided a choice does not determine whether she fits within the class; instead, it determines whether she would be eligible for damages at a later stage of the litigation. *Cf. Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities*

---

[5] Rule 23 does not specifically impose an ascertainability requirement, but the Seventh Circuit has recognized it as a "freestanding" requirement. *Mullins*, 795 F.3d at 664. Although this consideration perhaps bears a closer relationship to the Rule 23(b)(3) superiority prong, the Court will address Defendants' ascertainability argument under typicality where Defendants raise it.

*Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) ("[A] class can be certified without determination of its

size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus

justify a class action suit. . . . Recipients of faxes who don't have rights under the Telephone

Consumer Protection Act just wouldn't be entitled to share in the damages awarded to the class

by a judgment or settlement."). If Defendants gave the *Gary* option to the class members, it

would not narrow the class; instead, it would defeat the claims put forward by the class. *See*

*Suchanek*, 764 F.3d at 758 ("If very few members of the class were harmed, that is an argument

not for refusing to certify the class but for certifying it and then entering a judgment that would

largely exonerate [the defendant]." (citation and internal quotation marks omitted)).

Even if it were necessary to determine which class members were given the *Gary* option,

this would not render the proposed class insufficiently ascertainable because "the need for

individual proof alone does not necessarily preclude class certification." *Pella Corp. v. Saltzman*,

606 F.3d 391, 394 (7th Cir. 2010); *see also McMahon*, 807 F.3d at 875-77 (overturning district

court's denial of class certification because class is sufficiently definite where membership "does

not hinge on causation" and does not require investigation of "subjective states of mind," *id.* at

876). Identifying which potential class members were allowed to choose whether to return to

their housing units is a much simpler affair than the detailed medical examinations at issue in

*Jamie S.* or in similar cases involving a class member's subjective mental states or overall

physical functionality. Therefore, the Court finds that Plaintiffs have satisfied the typicality

requirement of Rule 23(a)(3).

## D.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

the interests of the class." FED. R. CIV. P. 23(a)(4). "This adequate representation inquiry consists

of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Most significantly, Rule 23(a)(4) aims to ensure that there are no conflicts of interest between the named plaintiffs and the putative class members. *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 714-15 (7th Cir. 2015).

Defendants do not challenge the adequacy of Plaintiffs' counsel or the named Plaintiffs' ability to adequately represent absent class members' interests. The Court also sees no deficiency in Plaintiffs' counsel's ability to represent the class and, as the named Plaintiffs and the members of the proposed class share the same interest in a monetary remedy for Defendants' allegedly unlawful policy, the Court foresees no potential conflict of interest in the litigation. Thus, the Court finds that the adequacy of representation requirement has been satisfied.

## II.    Rule 23(b)(3)

A court may certify a Rule 23(b)(3) class where all the requirements of Rule 23(a) have been satisfied and the plaintiffs show that "questions of law and fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The Court finds that Plaintiffs have satisfied this standard.

### A.    Predominance

Although predominance is similar to Rule 23(a)(2) commonality, Rule 23(b)(3)'s predominance requirement is "even more demanding." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Broadly speaking, the predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" to establish whether a

proposed class is "sufficiently cohesive to warrant adjudication by representation." *Messner*, 669

F.3d at 814 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This

assessment is not merely "counting noses: that is, determining whether there are more common

issues or more individual issues, regardless of relative importance." *Parko*, 739 F.3d at 1085. It

instead focuses on whether "common questions represent a significant aspect of [a] case and . . .

can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815

(alterations in original) (citation omitted). "[C]ommon questions can predominate if a common

nucleus of operative facts and issues underlies the claims," but, importantly, "[i]ndividual

questions need not be absent." *Id.* (citation and internal quotation marks omitted).

Defendants argue that "there is no question that individual issues (*i.e.*, whether a female

detainee was provided with the option of returning to their housing unit) overwhelm *any*

common ones." (R. 59, Defs.' Resp. at 20.) The Court has largely addressed this contention in its

discussion of commonality above. In short, Plaintiffs allege that Defendants have a policy or

practice of treating those entitled to immediate release in the same manner as regular inmates.

Defendants argue that their policy and practice is to present the proposed class members with the

choice to return to their housing unit. Individual inquiries of each class member may serve as

evidence in answering this question, but this does not transform the common question itself into

a collection of individual ones. Although Defendants assert that the need for individual inquiries

defeats predominance,[6] this position is contrary to the law as repeatedly set forth by the Seventh

Circuit. *See, e.g., McMahon*, 807 F.3d at 875 (a conclusion "that the existence of individual

---

[6] Defendants also argue that the difference in the class members' individual circumstances, such as whether they are being released on bond or probation, would preclude a finding of predominance. (R. 59, Defs.' Resp. at 20.) As the Court has narrowed the class definition to exclude any proposed class members with such individual issues, and as the Court finds no meaningful distinctions between the remaining members of the proposed class because of their varying circumstances, this objection no longer holds any force.

issues of causation automatically bars class certification under Rule 23(b)(3)" is "inconsistent with this court's decisions"); *Suchanek*, 764 F.3d at 759 (finding that "a supposed rule that individual issues necessarily predominate in cases requiring individual subjective inquiries into causality" constitutes "an error of law" (internal quotation marks omitted)); *Pella*, 606 F.3d at 394 ("Proximate cause, however, is necessarily an individual issue and the need for individual proof alone does not necessarily preclude class certification."). When determining liability requires individual inquiries, this does not defeat class certification so long as common questions of law and fact predominate over individual questions. *Messner*, 669 F.3d at 815. Here, the common questions of what policy or practice Defendants follow and whether it is constitutional predominate over any individual issues.

Defendants also argue that damages in this case would need to be determined on an individual basis. (R. 59, Defs.' Resp. at 21.) Defendants do not explain why this should be so, although their reliance on *Harper* and *Portis* suggests that they believe that those cases govern the present suit. (R. 59, Defs.' Resp. at 21.) As explained above, this is not the case. *Harper* and *Portis* challenged whether the defendants held the proposed class members for an unreasonable period of time. Those classes were not certified because common issues did not predominate over individual ones; the reasonableness of each individual's detention, which depended on the length of time each was held for and the circumstances requiring such a delay, was totally distinct from the reasonableness of any other individual's detention. *Portis*, 613 F.3d at 705; *Harper*, 581 F.3d at 515-16. The common issues in those cases were illusory—the only issues that had any bearing on their outcome were unique to each individual. In this case, the policy or practice followed by Defendants is a common issue, even if proving the existence of that policy may require individual inquiries. The constitutionality of that policy as applied to the narrowed

proposed class is a common issue, as the class members share the same liberty interest and the duration of their detentions is not at issue. If Defendants are found liable for applying an unconstitutional policy or practice in returning proposed class members to the jail's general population, then each class member who was thus treated would be eligible for the same damages because each suffered the same harm.

Even if it were necessary to conduct individual damages determinations in this case, that would not require denial of class certification. *See Mullins*, 795 F.3d at 671 ("[W]here the defendant's liability can be determined on a class-wide basis, but . . . there is no common method for determining individual damages[,] . . . courts often bifurcate the case into a liability phase and a damages phase."); *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008) ("Although the extent of each class member's personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts. . . . [T]he need for individual damages determinations does not, in and of itself, require denial of [plaintiff's] motion for certification.").[7] For these reasons, the Court finds that common issues predominate over individual ones, and thus the predominance requirement of Rule 23(b)(3) has been met.

## B.    Superiority

The superiority requirement of Rule 23(b)(3) aims to ensure that class-action cases "achieve economies of time, effort, and expense." *Suchanek*, 764 F.3d at 759 (citation omitted). This requirement "is comparative: the court must assess efficiency with an eye toward 'other available methods.' " *Mullins*, 795 F.3d at 664 (citation omitted). In this case, a class action

---

[7] Defendants assert, without argument, that "the narrow holding of [*Arreola*] does not apply here." (R. 59, Defs.' Resp. at 21.) They merely cite *Wrightsell v. Sheriff of Cook County*, No. 08 CV 5451, 2009 WL 482370 (N.D. Ill. Feb. 19, 2009), for its statement that *Arreola* had a "narrow" holding. (R. 59, Defs.' Resp. at 21.) This case, where there are substantial common issues outweighing the single variable of damages amounts, is precisely the narrow case on which *Arreola*'s narrow holding is instructive.

would make it possible to determine whether Defendants follow the alleged policy or practice and, if so, determine its legality in a single proceeding. The proposed class could include hundreds or thousands of members with claims who would not bring suit on their own. Although, as Defendants note, proceeding as a class action would entail "added cost[s] and resource expenditure" over a single individual claim, (R. 59, Defs.' Resp. at 22), no greater economy would be achieved by forcing each proposed class member to individually prove that Defendants follow the alleged policy or practice or by forcing the Court to determine its legality in numerous individual cases. Thus, the Court finds that Rule 23(b)(3)'s superiority requirement has been satisfied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for class certification as modified (R. 27). The Court certifies the following class under Rule 23(b)(3):

> All women who, after having been remanded to the custody of the Sheriff of Cook County, were found not guilty or were acquitted, were found guilty and sentenced to a sentence of "time considered served," or had charges brought against them dismissed or 'SOL'd, and for whom the Sheriff's Office no longer had any legal right to detain from April 27, 2010, to the date of judgment.

The Court designates Plaintiffs Annette Bell and Samantha Spielman as the class representatives and appoints Kenneth N. Flaxman and Joel N. Flaxman of Kenneth N. Flaxman, P.C., and Thomas G. Morrissey and Patrick William Morrissey of Thomas G. Morrissey, Ltd., as class counsel.

ENTERED: _____

Chief Judge Rubén Castillo
United States District Court

Dated: January 26, 2016